OPINION
This appeal arises from a decision by the Common Pleas Court of Logan County, Domestic Relations Division, to dismiss the objections filed by Defendant-Appellant and to enter judgment on the decision to which the objections were filed. Finding no merit to the arguments advanced on appeal, we affirm the judgment of the trial court.
Raymond Noble and Martha Turner were divorced in 1993, and Mrs. Turner was awarded custody of their two minor children, Mary Noble, born in 1990, and Jessica Noble, born in 1992. During the marriage, the couple predominantly resided in Ohio; however, after the divorce, Mrs. Turner moved with the children to Kentucky, where she continues to reside. Both parties have since remarried, although Mrs. Turner is currently going through a divorce with her husband.
Mr. Noble was granted visitation, which has been exercised predominantly during the children's summer vacations from school. On one occasion, Mrs. Turner's relatives violently assaulted Mr. Noble when he appeared in Kentucky to pick the children up for a visit. Also, Mrs. Turner was found in contempt for her failure to allow visitation in 1995. Several post-decree motions have been filed, including the contempt motion for failure to comply with visitation orders.
On September 10, 1999, Mr. Noble filed a Motion for Reallocation of Parental Rights and Responsibilities, Temporary Residential Parenting and Other Relief. Subsequently, the parties agreed that the appointment of a guardian ad litem was appropriate, and accordingly, she investigated both parties and the surrounding circumstances. The results of her investigation were detailed in her recommendation to the court.
Considerable pretrial activity occurred between the parties during the pendency of the motion, resulting in a representation to the court that all matters had been resolved and settled. Thereafter, the settlement apparently fell through, and on March 14, 2000, the final hearing on the motion was scheduled to be heard on April 14, 2000. This hearing was continued on several occasions thereafter, with a scheduling order being filed on April 27, 2000, setting the matter for final pretrial on June 12, 2000, and final hearing on July 24, 2000. On June 7, 2000, after extensive pretrial activity, including the completion of the report of the guardian ad litem and the court's in camera interviews of the children, Mrs. Turner moved for a Change of Jurisdiction and Dismissal of the within action, claiming that Kentucky was a better suited forum.
After denying the jurisdictional motion, the magistrate made his findings based on the merits of the case. Mrs. Turner filed objections in response to the magistrate's recommendation that Mr. Noble should be awarded custody of the two children; however, the trial court overruled the objections and adopted the magistrate's recommendation. From that decision, Mrs. Turner filed this appeal asserting two assignments of error for our consideration.
 Assignment of Error I The trial court erred in overruling Appellant's motion to change jurisdiction and motion to dismiss under Ohio Revised Code section 3109.21 to Ohio Revised Code section 3109.27.
The standard of appellate review for a domestic relations case is an abuse of discretion.[1] In order to find an abuse of discretion, an appellate court must find that the trial court's decision is unreasonable, arbitrary, or unconscionable. This constitutes something more than merely an error of law or judgment.[2] Absent such a showing, the trial court's judgment should not be disturbed on appeal.[3]
The Ohio Supreme Court has held that where a foreign state has a significant connection with the children involved in a custody dispute and is in a better position to receive and evaluate the salient facts of the children's well-being, an Ohio court should refrain from hearing the matter and should dismiss it so that the foreign state may hear the evidence in the best interests of the children.[4] Additionally, the Uniform Child Custody Jurisdiction Act, codified in R.C. 3109.21 through 3109.27, emphasizes that the state with the optimum access to the relevant facts should make determinations of this nature.[5]
In light of the Supreme Court's holding, Mrs. Turner claims that Kentucky is the proper forum for these proceedings because Kentucky is the children's home state as defined by R.C. 3109.21, and there is substantial evidence in that state regarding the children's care, schooling, and personal relationships. For the following reasons, we disagree.
The crux of this issue turns on the fact that the Ohio court has already granted the divorce of the parties herein and concluded at least two post-decree matters without any jurisdictional objection. Due to these prior proceedings, the Ohio court has conducted all the necessary background work and is familiar with the parties, the issues involved, and the children. Since the Ohio court has already dealt with issues involving custody, visitation, and contempt, and the parties have previously entered into custody and visitation agreements, a reasonable inference can be drawn that the parties themselves considered Ohio to not be an inconvenient forum.
Other factors also support Ohio as being the convenient forum. Mr. Noble has continuously resided in Ohio throughout his daughters' lives, and they have visited Ohio regularly since the divorce. Additionally, at the time the jurisdictional motion was made, substantial pretrial activity had been concluded in the matter, including the fact that the guardian ad litem had already completed her investigation, the trial court had already concluded an in camera interview of the children, and a final hearing date was set. These factors substantiate that Ohio is a proper forum, and therefore, we find that the trial court did not abuse its discretion in denying the motion to change jurisdiction.
Consequently, Mrs. Turner's first assignment of error is not well taken and is hereby overruled.
 Assignment of Error II The trial court abused its discretion when it granted Appellees motion for reallocation of parental rights and responsibilities.
A court may modify a prior decree allocating parental rights and responsibilities if it finds that there has been a change in circumstances of the child, the residential parent, or either of the parties subject to a shared parenting decree.[6] A change in circumstances must be based upon facts that have arisen since the prior decree or that were unknown at the time of the prior decree, and a modification must be necessary to serve the best interests of the children.[7] Furthermore, one of the following must apply:
 (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to change in the designation of residential parent.
 (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.[8]
When deciding whether a change in circumstances has occurred, "a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change, including a change in circumstances because of the child's age and consequent needs, as well as increased hostility by one parent * * * which frustrates cooperation between the parties on visitation issues."[9] Once a trial court decides that there has been a change in circumstances, that decision cannot be disturbed absent an abuse of discretion.[10] Based upon the following reasons, we find that the trial court did not abuse its discretion in making its determination.
The trial court found a change in circumstances based upon several factors. First, there has been a considerable passage of time since the last custody allocation of almost eight years. Consequently, the children have grown to a completely different stage of their lives. Furthermore, the oldest child has consistently expressed her desire to live with her father throughout these proceedings, and the trial court did not find any influence by either parent to pressure the children into choosing one parent or the other. Visitation has also been denied on several occasions by Mrs. Turner, and the nature of her relationship with her soon-to-be ex-husband has caused turmoil within her home.
We have previously held that a passage of time, alone, is not enough to justify a finding of a change in circumstances; however, a passage of time during a significant portion of a child's life, combined with other factors, such as the ones listed above, supports a finding that a change has occurred.[11] In this case, the children were born in 1990 and 1992, and both were moved to Kentucky with their mother in 1993. Therefore, a significant period has passed during a time, notably, when children go through considerable growth.
This court has also held that interference with visitation constitutes a change in circumstances warranting modification.[12] In this case, Mrs. Turner has been found in contempt on this issue, and testimony indicates that she has denied visitation on several occasions. Especially in conjunction with the reasons stated above, the trial court did not abuse its discretion in finding that a change in circumstances has occurred.
Once a determination has been made that a change in circumstances has occurred, the next step in the analysis is to decide whether or not a change would be in the best interests of the children. R.C. 3109.04(F)(1) lists several factors that should be weighed in order to determine the best interests of the children. Four of the factors listed therein weigh heavily on our decision.
R.C. 3109.04(F)(1)(b) states that the children's wishes concerning the allocation of parental rights are a factor to be weighed in a best interests analysis. Here, the oldest child conveyed to the magistrate in an in camera interview that she wanted to live with her father. According to testimony from the guardian ad litem, the oldest child's desire to live with her father has been consistent for some time. While the younger daughter has not been as consistent, she has not expressed any negative feelings about her father, and the girls are of ages where it would not be beneficial to separate them.
A second factor that buttresses Mr. Noble's position is provided in R.C. 3109.04(F)(1)(c), which states that "[t]he child's interaction and interrelationship with h[er] parents, siblings, and any other person who may significantly affect the child's best interest" should be considered.[13] In this case, some turmoil has been caused at Mrs. Turner's home due to the breakup of her current marriage. Both children expressed to the guardian ad litem that they did not like the fighting between their mother and their stepfather. And, although Mrs. Turner is going through a divorce with the children's stepfather, she has already been divorced from him once with the result being that they remarried a relatively short time thereafter. While this court recognizes the importance of relationship amelioration, the on-and-off again nature of their relationship obviously creates difficulty when children are concerned.
Additionally, R.C. 3109.04(F)(1)(d) provides that the court should consider the children's interaction and relationship with persons who may affect their best interests. Although the children in this case are adjusted to their home in Kentucky, they have also spent a considerable amount of time at their father's home in Ohio during the summer and during other visitation times, and they both have a strong bond with their father and their father's wife of seven years.
A final factor that weighs on this decision relates to visitation issues. R.C. 3109.04(F)(1)(f) states that the parent more likely to facilitate visitation should be considered in determining the best interests of the children. It is significant that Mrs. Turner has been found in contempt on this issue, and based on the testimony at trial, she has denied visitation on multiple occasions in the past. Also, the assault of Mr. Noble by Mrs. Turner's relatives when a visitation attempt was made contributes to a conclusion that Mrs. Turner would be lesslikely to facilitate visitation. Furthermore, Mr. Noble's past conduct supports his testimony that he would comply with all visitation orders, and therefore be the parent more likely to facilitate visitation.
Based upon these factors, the evidence supports the trial court's finding that the best interests of the children would be served by designating Mr. Noble the residential parent and legal custodian, and the harm likely to be caused by the change is outweighed by the advantages that the children will receive because of the change.[14]
Accordingly, the trial court did not abuse its discretion when designating Mr. Noble as the residential and custodial parent.
Therefore, Mrs. Turner's second assignment of error is not well taken and it is accordingly overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is affirmed.
SHAW and HADLEY, JJ., concur.
[1] Booth v. Booth (1989), 44 Ohio St.3d 142, 144.
[2] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[3] Id. at 218.
[4] In re Wonderly (1981), 67 Ohio St.2d 178, 186-87.
[5] Id. at 188; R.C. 3109.21-.27.
[6] R.C. 3109.04(E)(1)(a).
[7] Id.
[8] Id.
[9] Clark v. Smith (1998), 130 Ohio App.3d 648, 654.
[10] Id.
[11] Butler v. Butler (1995), 107 Ohio App.3d 633, 637.
[12] Clark v. Smith, 130 Ohio App.3d at 654.
[13] R.C. 3109.04(F)(1)(c).
[14] R.C. 3109.04(E)(1)(a)(iii).